IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EDWARD EMIT KAUTHEN,       ) | |
|        ) | |
|    Plaintiff,       ) | |
|        ) | |
| v.       ) | Civil Action No. 1:25-cv-01743 (RDA/IDD) |
|        ) | |
| JOHN PHELAN,       ) | |
| Secretary of the Navy,       ) | |
|        ) | |
|    Defendant.       ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss (the "Motion").

Dkt. 7. This Court has dispensed with oral argument as it would not aid in the decisional process.

Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is ripe for

disposition. Considering the Motion together with the accompanying Memorandum in Support

(Dkt. 8),[1] this Court GRANTS the Motion for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background

This case arises from a dispute between Plaintiff Edward Emit Kauthen ("Plaintiff"), a

federal civilian employee of the Navy, and Defendant John Phelan ("Defendant"),[2] acting in his

---

[1] The same day that Defendant filed the Motion, this Court issued a *Roseboro* notice. Dkt. 10. Despite the issuance of this notice, Plaintiff has not filed an opposition nor any other response, and the time to do so has elapsed.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, John Phelan has been substituted as the Defendant upon his swearing in as Secretary of the Navy.

1

official capacity as Secretary of the United States Department of the Navy (the "Agency"). This case concerns allegations of breach of a settlement agreement arising from a Title VII claim.

At all relevant times for the underlying Title VII complaint, Plaintiff worked as an Information Technology Specialist/Project Manager at the Agency's Marine Corps Cyberspace Operations Group ("MCCOG") in Quantico, Virginia. Dkt. 1-1, at 2. Believing that the Agency subjected him to unlawful discrimination, Plaintiff contacted an Agency Equal Employment Opportunity Counselor to initiate the Equal Employment Opportunity ("EEO") complaint process. *Id.* On January 10, 2022, Plaintiff and the Agency entered into a written settlement agreement (the "Agreement") resolving Plaintiff's EEO complaint. *Id.* at 3. Section 3G of the Agreement expressly required that Plaintiff's second-level supervisor, Mr. Petto, be removed from Plaintiff's chain of command and "refrain from engaging in communication of any kind with respect to Complainant's performance appraisals, work assignments, job duties, or performance awards, including but not limited to communications related to Complainant's contemplated or actual performance awards." Dkt. 1-1 at 3; Dkt. 1 ¶ 9. Despite this prohibition, Plaintiff asserts that the Agency allowed Mr. Petto to participate in Plaintiff's 2023 performance evaluation. Dkt. 1-1 at 5; Dkt. 1 ¶ 10.

On April 20, 2023, Plaintiff emailed the Agency, reporting their breach of the Agreement, and requesting that they comply with the Agreement. Dkt. 1-1 at 3. On May 10, 2024, the Agency released a final decision concluding that there was no breach of the Agreement. *Id.* Plaintiff subsequently filed an appeal with the Equal Employment Opportunity Commission ("EEOC"), which reached a decision on July 16, 2025. Dkt. 1-1. The EEOC found that "the Agency breached provision 3G" of the Agreement, and noted that the Agency admitted on appeal that Mr. Petto was consulted regarding Plaintiff's performance. *Id.* at 5; Dkt. 1 ¶ 11. In September 2025, the Agency

2

submitted a compliance report, memorandum, and other documentary evidence to the EEOC's Office of Federal Operations confirming that it had taken the necessary steps to comply with EEOC's order, such as fully removing Mr. Petto from Plaintiff's chain of command. Dkt. 8-1 at 12–24.[3]

In addition to this incident, Plaintiff also alleges that the Agency permitted Mr. Petto to serve as both the hiring manager and a member of the interview panel for a Deputy PMO (GS-14) position for which Plaintiff alleges he "was the natural candidate and direct report." Dkt. 1 ¶ 12. Plaintiff alleges that, due to Mr. Petto's involvement, he did not apply for the position and, thus, "lost a fair opportunity to advance to the GS-14 level" and suffered associated financial harm. Dkt. 1 ¶¶ 13-14.

### B. Procedural History

Plaintiff filed his Complaint on October 10, 2025. Dkt. 1. Following two consent extensions, on January 8, 2026, Defendant filed the instant Motion to Dismiss. Dkt. 7. On January 8, 2026, this Court notified Plaintiff of Defendant's Motion to Dismiss and Plaintiff's right to reply within twenty-one days pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 10. To date, Plaintiff has not responded.[4]

---

[3] This Court can properly consider these documents when determining if Plaintiff had standing because standing is a subject matter jurisdiction issue and "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings. . . ." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

[4] Despite Plaintiff's general lack of responsiveness, the Court considers Defendant's arguments on their merits and does not rely on the lack of opposition in reaching the result here. *See Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 222 (4th Cir. 2026) (reversing district court because "Rule 12(b)(6) simply does not provide for any such default relief").

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1219 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

## B. Rule 12(b)(6)

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III. ANALYSIS

In the Complaint, Plaintiff asserts two claims. *First*, Plaintiff asserts a claim for breach of the Agreement related to the involvement of Mr. Petto in Plaintiff's performance appraisals. Dkt.

¶¶ 18-22. Pursuant to this claim, Plaintiff seeks "specific performance of the Settlement Agreement" and "economic relief necessary to remedy the harm caused by the Agency's breach." *Id.* ¶ 22. *Second*, Plaintiff asserts a claim for "constructive denial of promotion opportunity caused by breach," relating to his decision not to apply for the Deputy PMO position. *Id.* ¶¶ 23-27. Essentially, Plaintiff argues that Mr. Petto's involvement in the hiring process was an independent breach of the Agreement. *Id.* Pursuant to this claim, Plaintiff seeks equitable and monetary relief, "including priority placement or retroactive promotion to GS-14 with corresponding back pay and benefits," as well as "a prohibition on any involvement by Mr. Petto in Plaintiff's performance, duties, awards, promotions, selections, or hiring processes." *Id.* ¶¶ 26-27.

Upon the Court's review, the Court finds that it lacks subject-matter jurisdiction over the case because Defendant has not waived his right to sovereign immunity.[5] Moreover, even if Defendant had consented to suit, the Court would still dismiss the action because Plaintiff lacks standing for Count I and has not exhausted his administrative remedies for Count II. Accordingly, the Motion will be granted.

## A. Subject Matter Jurisdiction

Courts lack subject-matter jurisdiction over claims against the Government and its agencies unless the Government has explicitly waived its sovereign immunity by consenting to be sued. *See Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) ("[T]he United States is immune from all suits against it absent an express waiver of its immunity." (citing *United States v.*

---

[5] Some courts have treated the issue of sovereign immunity in an enforcement of a Title VII settlement agreement case as a Rule 12(b)(6) issue instead of a Rule 12(b)(1) issue. This Opinion analyzes the issue pursuant to Rule 12(b)(1). *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[A] court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."). The Court's analysis, however, would be equally applicable if the Court considered the issue as arising under Rule 12(b)(6).

6

*Sherwood*, 312 U.S. 584, 586 (1941))).  Congress has explicitly waived the Government's sovereign immunity for claims under Title VII of the Civil Rights Act of 1964 ("Title VII") where the Federal Government is the employer.  *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007) ("Congress has, admittedly, waived sovereign immunity in Title VII suits where the federal government is the employer.").  However, in *Frahm*, the Fourth Circuit held that this waiver does not extend to actions asserting a breach of a Title VII settlement agreement.  492 F.3d at 262 ("However, [Title VII's] statutory waiver does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute.").

Although the plaintiff in *Frahm* sought money damages, district judges in this District have also applied the holding in *Frahm* to cases seeking equitable relief.  *See Kaplan v. James*, 25 F. Supp. 3d 835, 840 (E.D. Va. 2014) ("Other courts in this district ha[ve] since interpreted *Frahm* broadly, and in line with other courts of appeals, that the holding does not just bar claims for monetary relief, but also for specific performance and other forms of equitable relief."); *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 728 (E.D. Va. 2008) (interpreting *Frahm* to "require dismissal on sovereign immunity grounds unless either the settlement agreement or a statute allows the government to be sued"), *aff'd sub nom. Berry v. Locke*, 331 F. App'x 237 (4th Cir. 2009).  These holdings are consistent with the decisions of courts across the nation.  *See, e.g., Taylor v. Geithner*, 703 F.3d 328, 335 (6th Cir. 2013); *Munoz v. Mabus*, 630 F.3d 856, 862 (9th Cir. 2010); *Thompson v. McHugh*, 388 F. App'x 870, 874 (11th Cir. 2010); *Lindstrom v. United States*, 510 F.3d 1191, 1194 (10th Cir. 2007).  Accordingly, because Title VII does not waive the Government's sovereign immunity as to suits to enforce a settlement agreement and there is no allegation or indication that

the Government has otherwise consented to suit in this case,[6] the Court must dismiss the entire action for lack of subject-matter jurisdiction.

Even if the Government had otherwise consented to suit, the Court would still lack subject-matter jurisdiction over Count I because Plaintiff lacks standing to bring this claim. Count I of Plaintiff's complaint pleaded that he is "entitled to specific performance of the Settlement Agreement and to economic relief necessary to remedy the harm caused by the Agency's breach." Dkt. 1 ¶ 22. However, Plaintiff seems to have abandoned the request for economic damages relating to the breach in his prayer for relief. *See id.* Additionally, Plaintiff has not pleaded any facts that show economic harm from Defendant's breach outside of his constructive denial of a promotion claim. *Id.* Therefore, the only relief Plaintiff is seeking—or eligible for—for Count I is specific performance of the terms of the Agreement. The EEOC has already ordered that the Agency comply with the terms of the Agreement. Dkt. 1-1 at 5. Moreover, Defendant had already taken action to comply with the EEOC order before the Complaint was filed. *See* Dkt. 8-1 at 12–24.[7] When the redress that the Plaintiff is seeking has already happened, there is no "case or controversy" for which this Court has authority to decide. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 181 (2000) (holding that, to have standing, a litigant must show "that the injury will be redressed by a favorable decision"). Therefore, Plaintiff does not have

---

[6] The Agreement contains no language consenting to be sued in the case of Defendant's breach. *See* Dkt. 8-1 at 2–6. Nor does 29 C.F.R. § 1614.504—the regulation governing the procedure for appeals of the settlement agreement, *see* dkt. 8-1 ¶ 9—consent to appeals being brought before the court. *See* 29 C.F.R. § 1614.504. Moreover, even if 29 C.F.R. § 1614.504 consented to the suit, it would not be enough to waive the government's right to sovereign immunity. *See Kaplan*, 25 F. Supp. 3d at 839 (recognizing that "government regulations alone, with the express intent of Congress, cannot waive sovereign immunity" (quoting *Heller v. United States*, 776 F.2d 92, 98 n.7 (3d Cir. 1985))).

[7] This Court can consider these documents because they are analyzing whether Plaintiff has standing. *See supra* n. 3

8

standing to assert Count I. Without standing, this court lacks subject-matter jurisdiction and must dismiss the claim. *See* Fed. R. Civ. P. 12(h)(3).

### B. Failure to Exhaust

Even if the Government had waived sovereign immunity, Count II of the Complaint must also be dismissed because Plaintiff failed to exhaust his administrative remedies. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) ("An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." (citing 42 U.S.C. § 2000e–5(b))). Per the Agreement, Plaintiff's procedure for exhausting administrative remedies is governed by 29 C.F.R. § 1614.504. *See* Dkt. 8-1 ¶ 9. For Plaintiff to compel compliance with the Agreement he must notify the Agency's EEO Director of noncompliance, wait for the EEO Director's decision, and then he may appeal the decision to the EEOC. *See* 29 C.F.R. § 1614.504. Plaintiff did not mention his constructive denial of promotion claim in his appeal of the Agency decision. *See* Dkt. 1-1; Dkt. 8-1 at 8-10; Dkt. 1 ¶¶ 16, 17. Therefore, Plaintiff has not exhausted his administrative remedies for Count II because he did not raise it in the EEOC appeal this action arises from. *See* Dkt. 8-1 at 8, 9, 10. Assuming *arguendo* that Plaintiff has included his constructive denial of promotion claim in a subsequent action, that charge is pending before an Administrative Judge and he must wait until the conclusion of that matter to appeal. *See* Dkt. 1 ¶ 16; 29 C.F.R. § 1614.401. Because Plaintiff has not exhausted his administrative remedies in regard to this claim, even if the Court had subject-matter jurisdiction, the claim would still be dismissed on this basis.

### IV. CONCLUSION

For all of these reasons, the Court finds that it lacks subject-matter jurisdiction over the action because Defendant is immune from suit and because Plaintiff lacks standing to bring Count

I. The Court also finds that Plaintiff has failed to exhaust his claim for Count II, which is an independent basis for dismissal. Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss (Dkt. 7) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED without prejudice for lack of subject-matter jurisdiction; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 60 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

IT IS SO ORDERED.

Alexandria, Virginia
July **22**, 2026

_____ /s/
Rossie D. Alston, Jr.
United States District Judge

10